The next matter on our calendar is LaptopPlaza v. Starr Ind. May it please the Court, my name is Joshua Mellon. I represent the appellant in this case. On the evening of December 14, 2013, on the morning of December 15, over $700,000 of goods were stolen from the facilities in which my client kept their merchandise. At the time of the loss, there was an insurance policy in place that insured these goods. At the time of the loss, as a result of a theft, theft was covered under the policy of insurance. And at the time of the loss, the lost location, 1801 Northwest 135th Avenue, Miami, Florida, was covered as an insured location. Notwithstanding that, the district court found that because these goods were contained in a storage facility which was not part of the brick and mortar warehouse at this location, that the warehouse coverage did not apply. In so doing, the court— It wasn't a warehouse. It was a van, wasn't it? A truck? Well, it was a trailer. There was no cab attached to it. It was procured specifically because they were moving items back and forth between the physical warehouse and this other facility because there was construction going on. Whether it was a warehouse or not is really one of the primary issues. And the reason that it's an issue is because—for two reasons. One, the policy chose not to define warehouse, but that per se doesn't answer the question. But what we can do is we can look at the district court's definition, her own definitions, when she correctly says that when we have an insurance term that's not defined, we look at dictionary definitions. So let's look at dictionary definitions and let's look at the dictionary definition, one of two that the district court cited in her opinion. And the one that I will focus on that she quoted was a structure or room for the storage of merchandise or commodities. That's a Merriam-Webster definition. So warehouse, by that definition, does not need to be a brick and mortar location. It can be any type of structure or room that stores merchandise. That's exactly what this was at the time of the theft. So for the district court to determine as a matter of law, in essence— It's not a room. Can we agree on that? Correct. It's not a room. So under your dictionary, it's got to be a structure. Correct. So this trailer or however you want to— If you would say as it's rolling down the street, look at that cab pulling a structure. Well, one wouldn't—not at the time that it had been stolen. And remember, what happened here was— Was it only a structure when it's stationary? Yes. But not when it's moving. Correct. And just in terms of the context of how this took place, as it was constructed and utilized at the laptop's premises, there was no cab attached to it, and there were metal stanchions that were placed in the ground and this abutted— Are you saying— Sorry. You're saying you're reading the definition, but you're leaving out the part of the definition that it's for the storage of merchandise. That means that it was a structure built for the storage of merchandise. At the— The way you're using it, if one took an open lean-to, an open like—or a tent, a tent out in the woods, and one put the merchandise in it, according to the way you use it, that's a warehouse, because it's a structure that's being used by the user for the storage of merchandise. Well— That would be—that would kind of destroy the integrity of the meaning of warehouse, because a tent in the woods isn't built for the storage of merchandise. It isn't designed for the storage of merchandise, and neither is a trailer. It's designed to transport merchandise. So in any construct, we have to look at all of the circumstances and what would be the reasonable expectation of the insured in this type of a situation. Here, what you had—and the facts here are undisputed. The insured, you're saying, believed that this was a warehouse? For that—this very temporary purpose, yes, because what was going on, and this is undisputed, is what they were doing is they were rebuilding the permanent warehouse, and because they didn't have room to store everything, they literally took this other storage facility, okay? It was—it was—it abutted the warehouse. They were moving items back and forth and back and forth during the day, and at night because they didn't finish. They shut the bay doors. They shut this—they shut this facility. So during that period of time, Your Honor, yes, I would—I would contend that, in fact, there was—they were using it as a storage facility for their merchandise. Undisputable, but what's that got to do with it? Well, we're talking about— Are you saying that they—are you saying that there was testimony in the record that they said to themselves, wait a minute, we're only allowed—we're only covered by insurance if the goods are in a warehouse? Is a trailer a warehouse? Yes, it's a warehouse because we're using it for the storage of merchandise. Well, certainly not to that extent. Of course not. But did they believe that their goods were—that their—that these goods were un— They never thought of the question. The question didn't occur to them, I assume. They had increased their security to 24-7 security at the time that this was going on. Certainly they were— Did the policy require burglar alarms? Yes, it—yes, it did. Were there burglar alarms? There were not. So what do you think about that? That raises a different—well, that raises a different issue, which the district court didn't get to. Same with fire, right? Same with fire. And that gets to the issue of the severability aspects of this being a marine— Did you notify—did you notify Starr that you were using this van as a warehouse? Not beforehand. But there's nothing in the policy that would have required that. But you treated it as a warehouse, and people of good will could disagree as whether it was a warehouse. Wouldn't it have been prudent to let them know that you were using this van as a warehouse? Certainly in retrospect, and perhaps we wouldn't be here if they did, but that doesn't define whether or not it's covered by the policy. I just want to take a moment to go back to the issue of the warranty, because it was not addressed in the district court. It has been addressed in our briefs, and there's just a two-step process this Court would need to go through. If the Court determined that there was an issue of fact as it relates to whether this was a warehouse, then you get to the issue of whether there was a warranty that was violated. So the first question you have to ask is whether this is a marine policy or a non-marine policy, or whether the marine policy can be severed. We've given you that analysis in our brief and shown you case law that shows how courts, depending on the nature of the risk, can sever non-marine from marine risks. The significance of that is with respect to warranties, if it's a marine loss, a warranty is strictly enforced, it does not matter the materiality of the warranty. If, in fact, this is considered a non-marine risk, because we're talking about a warehouse, and we've cited you cases that have taken that similar approach, then you have to go to New York law and there has to be a material aspect of the violation of the warranty so that you would have to answer the question whether, given the nature of this loss, and remember there was not a break-in to the storage facility, it was rather hooked up by a cab that they stole from another facility and then dragged out, whether if there was an alarm in place, whether that would have increased the likelihood of the thieves being caught or not, given the fact that there was not a central station inside of that. And the burden, as we've cited in the Anjay case, the burden is on the carrier to establish the materiality of the warranty. So there's a several-step process that one has to go through. So it's not as simple as saying, did you have, was this location, did it have a fire or did it have burglary? No, end of discussion. It's not the end of discussion. It just sets forth a series of additional questions. I see my time is up. I've reserved two minutes. Yes, you have. I'll defer to my adversary. We'll hear from Starr. Good morning, Your Honors, and may it please the Court. My name is William Fennell from Nicoletti, Hornig, and Sweeney, and I represent the Pele, Starr, and Demondy. I'm prepared to briefly go over the facts as well as the arguments that I've set forth in the brief and the district court's decision, if that's what the court would like to hear. Otherwise, what I would like to do is jump directly to three points raised by Laptop Plaza counsel and address them directly. Go ahead. Thank you. In reverse order, counsel is arguing that the warranties must material impact the risk here, and he is relying essentially on state law. And what he is overlooking is the fact that the parties specifically agreed to the application of federal maritime law. And it is federal maritime law that strictly construes warranties, and materiality is not relevant in that instance. The other point that counsel raised was that the policy did not provide or require that notice be given to Starr in advance of the cargo being put in the trailer, as Your Honor had asked. Well, that may be true in the sense that it didn't require a particular trailer to be added, but certainly locations had to be told to Starr in advance unless you were going to fall under an unnamed location. And the reason for that was simple. There were prior thefts, and Starr conducted loss inspections of these facilities to make sure that they were burglarized, that there were fire alarms, that it was a secure facility for high-value cargo. Most importantly, though, Your Honor, directly to your point, which is the broker told Laptop Plaza in advance of storing the cargo in the trailers that the policy required the goods to be in warehouses, and yet Laptop Plaza never goes back and tells Starr, never tells its broker that what it's going to wind up doing is putting these laptops into a trailer. The last point I wanted to raise was the nature of this trailer, because what Laptop Plaza now seems to be saying is that it is the nature and use of the trailer at a particular moment in time which will govern whether it is a structure or not. Now, mind you, structure is not what's used in the policy. What is used in the policy is warehouse, and what we have here is a trailer that was not modified, as Laptop Plaza says. The stanchions that Laptop Plaza is referring to are mere trailer legs. You need them to keep your trailer up so that the cab can come under and connect to the trailer. There was no modification. There was no burglar alarm added. There was no fire alarm added. The only other modification that Laptop Plaza at best can reference is a leveling plate that connected the trailer to the warehouse for a forklift to go over it to unload the cargo. However, that leveling plate was not in place at the time of the theft. It couldn't be, and the district court found as much. It couldn't be in place because you could not close the separate doors to the trailer and the separate doors to the warehouse at the same time. These, as the district court found, are completely discrete objects. What do you say to counsel's argument about the dictionary definition, the aspect of the dictionary definition of a structure for the storage of merchandise? Your Honor, you have to look at the dictionary definition in its totality. I don't think what Laptop is trying to do is grab one word out of that dictionary definition and say, aha, this is now what the policy means. It doesn't. Let's look at what the district court said. What the district court said was it's a building, it's a room, it's a structure. What does a structure mean? If you look at Merriam-Webster's definition for structure, it gives us an example of building. We can't just isolate structure and say, ah, this is it. A car isn't a structure. No, it's tied to what the purpose was and the other aspects of the definition being warehouse, being a room, a building, and the like, and that's just simply not present here. We don't get to leave common sense at the door to come in and nitpick one word from the district court judge. So unless there are any other questions or issues . . . What about the aspect of it, which is for the storage of merchandise? Your Honor, the trailer isn't intended for the storage of merchandise. It's for the movement of . . . It is. You say it is not intended. It is not. It is for the movement of goods, just as we wouldn't call a trunk of a car a structure. It's for the movement of goods. It's for the movement of people. I don't know that you'd call it, that you wouldn't call the trunk of a car a structure necessarily,  I would agree with that as well. I mean, even if you would call the trunk of the car or the trailer a structure, the intention of building such a thing is not for the storage of goods. I would agree. Absolutely, Your Honor. So unless . . . Is that stipulation you mentioned in the record? You referred to a stipulation about marine insurance. I'm sorry, a choice of law provision in the policy. Oh, it's the choice of . . . It's not . . . You said it's stipulation. I apologize, Your Honor. Oh, it's the choice of law provision in the policy. Yes, in the sense that the parties had stipulated in their contract to the provision, but that is absolutely in the record. So unless there are any other issues that the court would like me to address, Starr would simply say that it respectfully requests that the district court's decision be affirmed in all aspects. Thank you, counsel. Thank you. Even if the materiality . . . even if materiality is a part of it, it would be pretty hard to argue that the term, the requirement of a warehouse, isn't material when what is substituted is something that's on wheels and can be rolled away. Absolutely, Your Honor. And there is case law, certainly from the State of New York, which indicated the failure to even set the alarm was a material breach of those warranties for burglar alarms and the like. And what must be remembered again is there is absolutely no connection to the burglar alarm in the warehouse to this trailer. Proof positive is they drove away with this trailer without ever triggering a fire alarm or burglar alarm. Thank you. Thank you. Mr. Malin, you've reserved two minutes for rebuttal. Thank you. Let me make a couple of things clear. In terms of the definitions that we've been talking about, counsel conflated the two definitions that the district court cited. She cited Black's Law Dictionary for the term warehouse. And Black's Law Dictionary uses the word building. When she quotes Merriam-Webster, and she says, or I'm looking at the special appendix on page 11 and gives the alternative definition, is or, quote, a structure or room for the storage of merchandise or commodities, unquote. It doesn't mention building. So, yes, is there a definition that says that it's a building? Yes. Is there a definition that says it's not a building? Yes. Those are the two definitions the district court quoted. This is not me seizing on a single word. It's me seizing on one of the definitions that the district court provided and arguing that if you utilize that definition, then this storage facility would constitute a warehouse, which is otherwise not defined. Well, if you could combine the two, it would be helpful to you. If you could say a structure used for the storage of goods taking part from each, that would be real good. But unfortunately the one that says building doesn't say for the storage of goods. It says used for the storage. And the one that says structure includes that it has to be for the storage of goods. For the storage of goods. Yes. But that's what was being done at the time that this loss took place. That's the other dictionary definition. You're combining. You're taking the one from the last. No. I'm quoting a structure or room for the storage of merchandise or commodities. There was merchandise being stored in a structure. Used for the storage. That's what I'm saying. And when we're talking about locations, we have to be clear that the only identified location is the address. And that, by the way, we didn't get into it, but there's a lot of citation to the Royal case and why the Royal case should be persuasive to this Court. In that case, the insurance company identified specific building locations, building 5F, building 12. Here it just says a location. So you could have multiple warehouses or multiple storage facilities at this location and fit within the policy. Indeed. You could have built another warehouse. I could have. I could have. It could have been covered, arguably. Yes. And the fact of the matter is there was quick reference to the loss inspection that was done. If the Court looks, and it's on page, I believe, 829 of the record, when they made the recommendations, it came out on October 29th. It gave them 60 days to comply with any recommendations. 893, excuse me. 892, 893. Gave them 60 days to comply. October 29th, 2013. When does the loss take place? December 14th, December 15th, within the 60 days. So even if they hadn't done anything, even if they had gotten this profile that says, look, we know about this and you have to do X, Y, and Z, they had 60 days to do it. The loss happens within the 60 days. There would be coverage. What do you say about the choice of law provision as bearing on the warranties? Yes. So the choice of law provision, which is found on paragraph 68 of the policy, says as follows. It says, I want to quote it. This policy and all endorsements shall be governed by the federal maritime law of the United States, period. In the absence thereof, the laws of the State of New York shall apply. So that choice of law provision, of course, begs the question as to whether maritime law can apply to a warehouse endorsement that is completely non-marine in nature. And what the courts have done when faced with that provision is they call a cat a cat and a dog a dog. So you can have all the agreements in the world, but you can't apply maritime law to a non-maritime risk. That's what all of the courts that sever the policy say as being nonsensical. They're not going to apply principles of maritime insurance to hog whistles, in one case, or coffee beans, in another case, in a storage that has nothing to do with maritime. Thank you. In case you end up not covering insurance, you might think of making it up by selling the movie rights. I'll keep that in mind. Thank you both for lively argument. We're going to take a ten minute break, the bench will, before we hear the last case on our calendar. Thank you. Court stands at recess. Thank you.